Anthony R. Thompson, Allentown, for appellee, Mack Trucks.

Before DOYLE and SMITH, JJ., and RODGERS, Senior Judge.

**MACK TRUCKS, INC.**

v.

**LEHIGH COUNTY BOARD OF ASSESSMENT APPEALS and County of Lehigh**

**County of Lehigh, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 1996.

Decided April 17, 1997.

SMITH, Judge.

The County of Lehigh (County) appeals from an order of the Court of Common Pleas of Lehigh County (trial court) determining that the fair market value of property owned by Mack Trucks, Inc. (Mack) as of September 1, 1993 and September 1, 1994 was $13,440,000. The questions presented by the County are (1) whether the trial court abused its discretion, erred as a matter of law and/or rendered a decision unsupported by substantial evidence in determining that the highest and best use of the current truck manufacturing facility is as a multi-user, tenant-occupied facility rather than a single-user facility and (2) whether the trial court abused its discretion or erred in failing to consider the current owner as a potential buyer of the real estate for purposes of determining fair market value and the highest and best use.

I

Mack owns approximately 148 acres of land improved with a one-story building of roughly 900,000 square feet, which Mack uses for assembling trucks. The County Board of Assessment Appeals determined that the fair market value of the property was $22,000,000. On Mack's appeal to the trial court Mack presented the appraisal report and testimony of William E. Bott, a real estate appraiser, setting the value at $10,500,000, and testimony and a marketing report of David E. Beal, an industrial real estate broker. The County presented testimony and a report from the appraiser Debo-

rah S. Skeans, which set a value of $18,000,-000. The trial court's order setting the value of the property included a lengthy footnote explaining the court's findings and reasoning, which was later incorporated by reference into the trial court's opinion in support of the order.

The trial court had toured the plant in operation and noted that it is a shell building more akin to an assembly area than to a traditional "smokestack" manufacturing plant. The complete underassembly of a truck is delivered at one end of the building, and parts are added until there is a finished truck at the other end. The building was constructed in its entirety in 1975 of average materials and workmanship, and it has been well maintained and is in good condition. It is located over five miles from the nearest interstate highway, with access over two-lane, blacktopped roads. The site is not served by public water or natural gas facilities.

Concerning the value of the land, the trial court noted that the parcel was not adjacent to or near an interstate highway, as were parcels used by the County's appraiser for comparable sales, and that it could not be served by rail. The trial court rejected the County appraiser's figure of $750,000 for an unused portion of the land and expressly found the appraiser to be not credible in this instance. Noting a sale of approximately 36 acres by Mack in 1987 for $27,853 per acre and the lack of any dramatic increase in land values since then, the trial court valued the land at $30,000 per acre for a total of $4,440,-000.

As for the building, the trial court's principle finding was that, if sold in the marketplace, it would be put to use by more than one entity; that is, there was no reasonable probability that one entity would wish to purchase the entire facility for its own use. From that finding the trial court went on to discuss modifications that would be necessary to adapt the building for use by multiple manufacturing and/or warehousing operations, including division of the office space

and provision of tall interior walls, individual electric and heating capabilities and additional loading docks. Applying a figure of $10 per square foot, the trial court arrived at a value of $9,000,000 for the building, resulting in a total fair market value of the property of $13,440,000.

The trial court's opinion in support of the order concluded that the County's challenges to findings as to the possibility of purchase by a single user, the value of the property and the poor location of the facility related to factual determinations for which the court found adequate support in the testimony of Mack's witnesses. As for the County's suggestion that Mack should be considered as a possible purchaser, the trial court noted simply that a sale to itself did not seem reasonably possible and would certainly not be "arms length" in the open market.

As the County notes, this Court's scope of review following a trial court's de novo determination in a tax assessment case is limited to determining whether the trial court abused its discretion, committed an error of law or made findings unsupported by substantial evidence. *County of Monroe v. Bolus,* 149 Pa.Cmwlth. 458, 613 A.2d 178 (1992). Mack adds that the trial court as fact finder determines the weight to be accorded the testimony of an expert witness on valuation and that this Court gives the trial court's findings great deference and will not disturb its decision unless there is clear error. *In re Appeal of V.V.P. Partnership,* 167 Pa. Cmwlth. 282, 647 A.2d 990 (1994), *appeal denied,* 540 Pa. 615, 656 A.2d 120 (1995). Resolutions of conflicting testimony and determinations of credibility and of the weight of the evidence are within the province of the trial court. *Dawson v. Susquehanna County Tax Claim Bureau,* 64 Pa.Cmwlth. 106, 438 A.2d 1067 (1982).

II

■ The County first challenges the trial court's determination of the highest and best use of the property as being for multiple users rather than for a single entity.[1] After

1. Pennsylvania cases consistently hold that the actual market value is the price that a purchaser,

willing but not obligated to buy, would pay an owner willing but not obligated to sell, taking

noting similarities between the opinions of the appraisers on both sides concerning various positive aspects of the building, the County asserts that the opinions of Bott and Beal that there is a slight possibility that the property would be purchased for use by a single entity are not supported by the evidence.

The County notes that Mack's witness Bott stated, on cross-examination concerning a chart in his appraisal report showing a decline in the relative number of manufacturers with more than 500 employees, that the relevant market for the sale of a property such as Mack's would be at least Pennsylvania and the surrounding states. In that market, he stated, there would be hundreds of manufacturers of that size. N.T., April 17, 1995, p. 143. Although Mack's witness Beal testified that his company had sold nine manufacturing facilities in excess of 700,000 square feet in the United States since 1990, the County asserts that this testimony is irrelevant for determining market demand, because Beal stated that he could only hazard a guess without inquiring into the data base for a specific number as to the total number of such facilities available for sale in that period. Based on these points, the County characterizes the testimony of Bott and Beal as to market demand as speculative.

The County asserts that the testimony of its witness Skeans, in contrast, described actual sales of large manufacturing properties within the Commonwealth. She stated that from the recessionary period of 1990 and 1991 to 1995 occupancy rates for industrial space in the Lehigh Valley improved from 75 percent to 85 percent. A summary from the Pennsylvania Industrial Development Authority for projects with loans over $8,000,-000 showed the development of 2,000,000 square feet of vehicle manufacturing or vehicle-related manufacturing space in the same period, including new construction of a 224,-000–square–foot facility in Montgomery County and renovation of a 1,400,000–square–foot facility and acquisition and renovation of a former K–Mart warehouse, both in Philadelphia. The County concludes from this that there was a demand for a large manufacturing facility within the vehicle related sector of manufacturing.

This Court agrees with Mack that the County's argument amounts to an assertion that the trial court should have accepted the testimony and evidence of its witness over that presented by Mack. Although contending that the opinions of Mack's witnesses as to the highest and best use were speculative, the County does not advance an argument supported by citation that their testimony was incompetent. The record reveals that, regardless of concessions these witnesses may have made on cross-examination as to particular points, they adhered to their underlying expert opinions that the probability that the facility in question would be purchased by a single user for a manufacturing purpose was extremely low. Concerning market factors, their reports and testimony indicated a continuing decline in demand for large, single-user manufacturing facilities as a result of down-sizing and business decentralization, a demand for smaller-size spaces for manufacturing facilities than the large building involved here and an increasing demand for warehousing as opposed to manufacturing facilities.

Factors tending to reduce the building's value for warehousing purposes were shown to be ceiling heights lower than current standards, the relative breadth of the building, the lack of an adequate number of loading docks and the difficulty of installing more docks due to the location of the sprinkler-system water line ringing the building. As Mack emphasizes, the trial court in its opinion expressly found Mack's witnesses to be well qualified and convincing. On the record

into consideration not only the present use of the property but all of the uses including the highest and most profitable use to which the land is available and adaptable. *Bolus.* The parties' witnesses and their reports agreed that a property's highest and best use is the use or combination of uses that are permitted under existing or reasonably attainable zoning and/or other regulations; for which there is an economic, social and/or market demand; for which the property is physically suitable or adaptable; and that are harmonious with the nature and condition of existing neighborhood development. *See* County's Ex. 2, Appraisal Report of Deborah S. Skeans, p. 25.

presented, the Court concludes that the trial court did not make unsupported findings as to the highest and best use of the facility in the market at the times of valuation.

Next the County contends that the trial court abused its discretion and erred in failing to consider Mack as a potential purchaser of the real estate in determining its highest and best use and fair market value. The County acknowledges that a value-in-use method of valuation is prohibited in Pennsylvania. *F & M Schaeffer Brewing Co. v. Lehigh County Board of Appeals*, 530 Pa. 451, 610 A.2d 1 (1992).[2] Nevertheless, the County argues that consideration of a current occupant's use as the highest and best use is not tantamount to a value-in-use analysis, citing *Bolus* and *McGraw–Edison Co. v. Washington County Board of Assessment Appeals*, 132 Pa.Cmwlth. 437, 573 A.2d 248 (1990). The County refers to testimony of Mack's witness Bott on cross-examination (over a continuing objection) that Mack would be considered among the potential purchasers in Bott's hypothetical market in which 10 percent of all potential purchasers would be single users. From this the County concludes that the trial court erred by declining to consider Mack as a purchaser intending to continue the present use in making its determination of the proper highest and best use.

The Court agrees with Mack that the County's argument is a transparent attempt to apply the value-in-use method of valuation to the present assessment. *Bolus* emphatically rejected an owner's contention that his partially protected wetland property should be assigned zero value. Although he had

shown that the land was of no use to him at the time in question, he had not shown that it could never be of any use to anyone. *McGraw–Edison Co.* held simply that an expert's conclusion that continued use of a property by a single manufacturer in the same or a similar capacity as the present owner did not violate the prohibition against value-in-use valuation. The expert testified that he understood the difference between the value-in-use and value-in-exchange concepts and had applied the latter. As Mack points out, continued use for the same or a similar purpose as the present use certainly may be considered where that is the most reasonably probable use in view of marketplace demand, but continued use may not be considered otherwise. The cases cited by the County in no sense require consideration of the present use as the highest and best use or consideration of the strained concept of a hypothetical purchase by the present owner.

Accordingly, the trial court committed no error in its determination of this matter. The order of the trial court is, therefore, affirmed.

### ORDER

AND NOW, this 17th day of April, 1997, the order of the Court of Common Pleas of Lehigh County is affirmed.

---

**2.** The value-in-use method is based upon the use and the value of that use to the current user, which may be higher than the value in the marketplace; value-in-use may not be considered in assessing the fair market value of property for tax assessment purposes. *F & M Schaeffer Brewing Co.*